**5124 DRUG CORP. and Lowitt Labs, Inc. and Plaintiffs No. 1 et al. Listed as Parties Plaintiff on Schedule A Annexed Hereto, Plaintiffs,**

v.

**HUMAN RESOURCES ADMINISTRATION OF the CITY OF NEW YORK, James A. Krauskopf, Individually, and as Administrator/Commissioner of the City of New York, Angel A. Gonzalez, Individually and as Assistant Deputy Administrator of the Human Resources Administration of the City of New York, and Barbara Blum, Individually and as Commissioner of the Department of Social Services of the State of New York, Defendants.**

No. 82 Civ. 1448 (RLC).

United States District Court,
S. D. New York.

May 21, 1982.

Rosenbaum, Wise, Lerman, Katz & Weiss, New York City, for plaintiffs; Marvin S. Lerman, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, Henry M. Adler and Charles Palella, Asst. Corp. Counsel, Robert Abrams, Atty. Gen. of the State of N.Y., Florence Abrams, Asst. Atty. Gen., New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs, pharmacies participating as providers in the Medicaid program, moved by order to show cause for a preliminary injunction to preclude administrators of the Medicaid program from recovering alleged overpayments to plaintiffs. The dispute arises from the City of New York's recently initiated attempt to complete an audit of the Medicaid reimbursement program that it administered in the 1970's. The source of the problem lies in the City's poorly supervised pre-audit payment program. This program enabled pharmacists to obtain prompt payment for Medicaid prescriptions that they filled by reimbursing the pharmacists 75%–85% of the total new Medicaid billings they submitted each month without requiring the pharmacists to await an audit of those bills. Inherent in such a pre-audit payment scheme is the risk that some providers would be overcompensated because, for example, they might submit bills for services or merchandise that was not covered by Medicaid. Apparently, much overpayment did occur and the City is now trying to recoup an alleged $8,000,000 of overpayments.

Although the program was in effect between 1972–1976, the City only recently had completed an independent audit of the pre-payment records. As a result of this audit, the City began to notify providers of their alleged outstanding debts (in many cases apparently exceeding $20,000) and to request repayment. Arrangements were made with the state of New York, which now administers the Medicaid program, to recoup the overpayments from pharmacists who do not voluntarily pay by deducting 10% of each pharmacy's periodic (ordinarily 20–30 days) Medicaid billings. Prior to the initiation of this garnishment, the city will allow each provider the opportunity to contest the assessment through a pre-billing conference. The City has not specified the precise procedural safeguards available at this conference other than to state that the records upon which the claim of overpayment is based will be available to the phar-

macy and that the pharmacy may present rebutting documents. The principal protection against improper recoupment that the City promises the plaintiffs is a post-recoupment administrative hearing before an impartial examiner where the pharmacy may introduce evidence and the City will bear the burden of persuasion.

The plaintiffs allege that this recoupment program will harm them irreparably by causing them to lose their businesses and by denying them the opportunity to contest the validity of the City's claims of overpayment in a full evidentiary hearing prior to actual recoupment. The court is unpersuaded that the program will have as dire impact upon the pharmacies as they portray or that the administrative process adopted by the City will abridge any constitutionally guaranteed rights of the plaintiffs. Accordingly, the motion for a preliminary injunction is denied.

■ The City's installment plan will allow the plaintiffs to repay their debts without undue stress on their businesses. In any billing period, a pharmacy will be charged no more than 10% of the Medicaid portion of its accounts receivable. Thus, there should be no serious interruption of an enterprise's cash flow while it returns to the City public funds improperly paid out. The plaintiffs have introduced affidavits that assert that some pharmacies may have as much as $3,000 withheld by the state each month under the recoupment plan. Although in absolute terms this is a substantial amount, this magnitude results from the large size of the pharmacies' dollar volume, and in no way undermines the City's claim that the 10% installment scheme will not interfere significantly with the health of the plaintiffs' going concerns. Recoupment itself, thus, will not create any irreparable harm; at worst, the plaintiffs will suffer the loss of funds they are entitled to for the period of time between the date of attachment and when they prevail at an administrative hearing offered by the City to contest the recoupment charges. Such money damages may not form the basis of a claim of irreparable harm neces-

sary to support a preliminary injunction. *See, e.g., Thompson v. New York Central Railroad Company*, 361 F.2d 137, 145–46 (2d Cir. 1966); *Woodland Nursing Home Corp. v. Califano*, 487 F.Supp. 9, 12 (S.D.N.Y.1979) (Duffy, J.).

■ The assertion of irreparable harm because of the denial of an evidentiary hearing prior to recoupment is similarly flawed. The argument that the constitution requires an adversarial hearing at which the City will bear the burden of demonstrating the validity of its claim to the funds builds upon an overly expansive reading of the United States Supreme Court's interpretation of due process requirements surrounding government deprivation of private property. The necessity of a pre-deprivation hearing, the rule announced in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), has been limited to a narrow range of circumstances, for example, where subsistence level public aid is at stake and the decision to deny those benefits requires the administrative official to weigh issues of credibility and veracity. *See Mathews v. Eldridge*, 424 U.S. 319, 338–40, 96 S.Ct. 893, 904–05, 47 L.Ed.2d 18 (1976); *cf. Clove Lakes Nursing Home v. Whalen*, 45 N.Y.2d 873, 410 N.Y. S.2d 804, 383 N.E.2d 106 (1978) (due process clause does not require hearing prior to recoupment of alleged overpayment to nursing home). *Eldridge* set out a three step analysis to guide courts reviewing for procedural adequacy administrative decisions that adversely affect property rights. At the outset, attention should be paid to "the degree of potential deprivation that may be created by a particular decision. . . ." *Mathews v. Eldridge, supra*, 424 U.S. 341, 96 S.Ct. 906. Additionally, a reviewing court should consider "the fairness and reliability of the existing . . . procedures, and the probable value, if any, of additional procedural safeguards." *Id.* at 343, 96 S.Ct. at 907. Finally, the court must assess the "public interest[,] includ[ing] the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand in all cases prior to the [deprivation of property interests]." *Id.* at 347, 96 S.Ct. at 909.

■ The City's proposed recoupment plan clearly passes constitutional scrutiny under this three factor analysis. As discussed above, the plaintiffs are not threatened with the loss of life sustaining, or even business maintaining, payments. At issue here is a small fraction of gross revenues of successful retail sales ventures. Withholding these funds pending a final determination of entitlement, while incommodious, is not the harsh loss that mandates a full evidentiary hearing prior to any attempted government imposed deprivation. Moreover, the proposed procedures afford plaintiffs much in the way of fairness and reliability. The City employed an independent certified accounting firm to evaluate the pre-audit payment program and will allow the plaintiffs a limited opportunity to contest the accuracy of the assessments at a billing conference prior to commencing recoupment. Finally, the public has a great interest in promptly recovering a debt, totaling $8,000,000, that has been outstanding for as long as ten years. That the City has waited so long for return of funds that it advanced to the plaintiffs does not diminish the power of its claim. The social costs of additional delay are great in a time of high interest rates and an overburdened public assistance budget. Denying the City use of the money pending the outcome of administrative hearings will force it to borrow funds or to curtail general welfare programs, or, more likely, to do both. Such an adverse impact cannot be ignored, particularly in conjunction with the relatively smaller inconvenience the recoupment program will visit on the affected pharmacies and the substantial safeguards built into the proposed procedures. Those procedures, if followed, will accord plaintiffs all the rights guaranteed by the due process clause of the Constitution. Therefore, postponing the opportunity for a full evidentiary hearing until after the initiation of recoupment will not irreparably harm plaintiffs by foreclosing procedural protections that they are entitled to.

Having failed to establish that they will be irreparably harmed if the court does not grant a preliminary injunction, the application for the injunction is denied. In doing so, however, the court notes that its findings rest upon the City's representations that each plaintiff will receive the opportunity to challenge the assessments at a billing conference before recoupment and at an evidentiary hearing after commencing recoupment, at which the City will bear the burden of proving its claims based upon substantial evidence. As part of the order denying the motion for a preliminary injunction, therefore, the pre-recoupment and post-recoupment administrative procedures which the City will institute and follow in these matters will be set forth in detail therein so that affected pharmacists will be under no misapprehension in that regard.

SETTLE ORDER.